We'll hear argument this morning, Case 22-585, Culley v. Marshall. Mr. Voretsky? Mr. Chief Justice, and may it please the Court. The question presented is narrow. Should courts apply Matthews or Barker to assess the sufficiency of process in civil forfeiture proceedings? The answer is Matthews. Matthews is the default due process standard for civil cases, and for good reason. It assesses both the private and governmental interests to guard against unreasonable risks of error. And the Court has consistently applied it to determine whether more process is due, including in good, another civil forfeiture case. Respondents prefer Barker because Barker's answer is always no additional process. But Respondents' primary argument is just that 8850 and von Neumann already decided the question. Not that Barker makes sense and Matthews doesn't. Respondents are wrong. As the Second and Sixth Circuits have explained in adopting Matthews over Barker, 8850 and von Neumann concerned the length of time for a final disposition, rather than the need for an interim hearing. The litigants in 8850 and von Neumann also were not claiming innocence, so they were not seeking, and the Court did not address, retention hearings. Only Matthews can answer the sufficiency of process question. The Courts of Appeals and State Supreme Courts that have addressed the question presented have overwhelmingly chosen Matthews over Barker. Although the Court need not go beyond the methodological question presented and apply the Matthews factors, the point of Matthews is to ensure that laws adequately protect the Constitution's fundamental due process guarantee, taking into account the private and governmental interests at stake. It's not to micromanage state legislatures. The easiest way for a jurisdiction to ensure its laws comport with due process, as the Second and Sixth Circuits have explained, is generally to offer a reasonably prompt post-seizure hearing to allow claimants to raise an innocent owner argument. Indeed, numerous states have done just that, and their experience makes clear, contrary to respondents' contentions, that retention hearings are workable and effective. I welcome the Court's questions. Before we get to the choice between Barker and Matthews, isn't there an antecedent question as to whether or not there's any constitutional requirement for additional hearings in the context of forfeiture? Justice Thomas, I think that that question is what Barker or Matthews, depending on which test this Court were looking at. Well, the reason I ask that is because you seem to assume that an additional hearing is required. We're not assuming that an additional hearing is required. We're saying that Matthews is the way to analyze whether an additional hearing is required. Matthews is the test that the Court has applied in cases like Goode, where a litigant comes forward and says the process being provided, in this case, as in Goode, no hearing, is insufficient. And the way to think of that under Matthews is to say, well, what are the private interests in a hearing, what are the governmental interests on the other side, and what would be the value of additional processes? Well, let me ask you this. In your case, if you had filed a motion for summary judgment a week after the property had been taken or the process had begun, forfeiture proceedings began, would you be here? I think we would be here. Why? You would have your property back because you won on summary judgment, right? We won on summary judgment after going through discovery with the State, which, by the way, the State took five months to respond to our discovery requests. Summary judgment, we would have won, but due process is an affirmative guarantee that requires more than the possibility that a judge would expedite summary judgment. But if you got your property back, what would be the constitutional problem? What would be the due process problem? If we had promptly gotten our property back, measured by days or weeks rather than months or years, then in that situation I think we probably would not have a constitutional claim. So here's my problem. You say that you could have, under Alabama's procedures, you could have gotten your property back in a reasonable time. You could have. Hypothetically, we could have, just as somebody could come to this court and ask it for extraordinary relief that the court is under no obligation to provide. Due process doesn't depend on whether a court is going to exercise its discretion to expedite a case. Realistically, courts rarely do that. And moreover, the summary judgment standard, that's about proving your ultimate entitlement on the merits definitively. You said courts rarely do that. Do we have any evidence about how long or how often courts in Alabama grant motions to expedite in this context? So, Mr. Chief Justice, there is not a record on that. I think as a practical matter, not in the record. It's not very common. But in terms of applying the Matthews factors, that is something that could be considered and that could be developed on remand in assessing what is the value of additional procedures. Again, the methodological question here in determining whether an additional hearing is required is just how do we think about that? Do we think about that by applying the Matthews factors, which is the traditional test for determining whether additional process is due in the civil context? Can we go back to your answer to Justice Thomas? The purpose of summary judgment is to decide the ultimate question, who owns the car. Correct? Yes. The purpose of a post-seizure hearing is to determine who keeps custody of the car. Correct? Yes. And the focus is therefore different. The focus in the hearing would be there might be a disputed issue of fact with respect to ownership. The government might claim it needs discovery. A government might claim it has some facts that would lead to a judgment that it needs to explore. But the court would then weigh whether or not that is sufficient not to give custody to the car owner pending the hearing. Correct? Yes. So summary judgment doesn't answer this question for the isolated question of who keeps custody of the car pending the ultimate judgment. Correct? That's right. May I ask about that? I'm sorry. Please. I was just going to say whether or not summary judgment is adequate given that difference in the focus of the hearings. I'm presuming that's why you're saying that's not the issue before us. The issue before us is what of the two tests do we apply to determine whether that's enough or not. That's right. I mean if I could ask about that same kind of thing, what the difference is between the retention hearing and the final forfeiture determination. I mean take a case like this where your client is raising an innocent owner defense. Now I would think that the questions about whether she was an innocent owner are pretty much the same in the retention hearing and in the final forfeiture determination. Isn't that correct? I think the substantive question is the same, yes. Now there is a different burden, but if she can prove at the retention hearing under a probable cause standard that she is entitled to the car back, I mean there's no way the government is going to lose on the final determination, right? I mean she's proved that she's entitled to the car. I think that's most likely correct. In theory by the time of the final determination there could be some additional discovery or investigation that happens that would change the calculus. Yeah, I suppose in an individual case, but most likely the government probably would just give up at that point, right? Under this very generous standard to the government they've lost. They're not going to keep on pursuing the thing. So she's gotten her car back and the case is over. And I guess what this suggests is that in both cases you're really adjudicating the same thing, which is like am I entitled to my car back right now? So how is it really different? I understand saying this is interim, this is final, but in the end it's just am I entitled to my car back now? Justice Kagan, I think that the substantive question is the same, but there are a few key differences between the retention hearing and the later merit determination. For one thing, I don't know that the premise is correct that the government would just give up if it loses at the retention hearing. Again, there's a different procedural standard later. The government has the opportunity to conduct more discovery. The government also has in Alabama, as well as 25 other states, a financial incentive to keep pursuing the forfeiture proceedings because they get to keep the proceeds. And so I don't know that it's empirically correct that the government would simply give up if it loses at the retention hearing. I guess what I'm asking is if we've had a case that says the constitutional rule about forcing a determination about who's entitled to the car is the Barker rule, why it is that we can say, well, we have that rule, but in fact there's another constitutional rule which is much more beneficial to the claimant that's meant to address exactly the same question that we held in 8850 was addressed by Barker. So I think they're different. For one thing, I think they are different questions. As the Second and the Sixth Circuit have explained, in Barker, the only question, it was essentially a case where the claimant was trying to argue a gotcha. There was no argument in Barker, I'm sorry, in 8850 or von Neumann, that the government was not ultimately entitled to forfeit the property. There was no innocent owner defense. The claimant's argument there was, well, but you waited too long in order to actually complete the proceedings, and therefore I get my car back. And in that situation, this court said, the Barker test applies. There's a different argument where you have an innocent owner defense, where you have somebody coming forward and saying, I should be entitled as a matter of Alabama state law, the rights that Alabama state law gives to me, I should be entitled to keep my car. And the state can't affect a de facto forfeiture of that car for months or years during the pendency of proceedings. But in both cases, the claimant wants the property back in the interim, and the court, I mean, couldn't have been much clearer in its language. The forfeiture proceeding without more provides the hearing required by due process to protect von Neumann's property interest in the car, and then repeated it two pages later. The right to a forfeiture proceeding meeting the Barker test satisfies any due process right with respect to the car and the money. And those, to me, didn't seem to be accidental comments. I went back to the oral argument transcript of exactly this question was posed about, is that all the process that's due, and the court was very definitive. So you've referred a few times to methodological questions. Methodologically, how can we get around, from your perspective, that seemingly clear statement? I know you have factual distinctions, but those are broad, clear statements that have guided court since. Justice Kavanaugh, I think those statements have broad language that has to be understood in context. With respect to the first sentence that you quoted, the forfeiture proceeding without more provides the post-seizure hearing the due process requires, that was in Part 2 of von Neumann. Part 2 of von Neumann was the section of that opinion holding that the claimant had no due process interest in the first place. That sentence can't reasonably be understood to say anything about due process, whereas here, the substantive Alabama law confers an additional interest that then gives rise to new due process requirements. With respect to the second sentence that you quoted, first of all, that was just referring back to the first sentence from Part 2, which, again, doesn't apply here. In the third part of the von Neumann opinion, where that sentence comes from, the court assumed that a protected due process interest existed. That assumption doesn't really make a lot of sense doctrinally. You can't have a due process interest in a remission proceeding, which is essentially like a discretionary pardon. That was the argument, right? The court assumed there that there was a due process interest, but I'm saying the assumption doesn't even really hold because you can't have a due process interest in that kind of a discretionary proceeding. And beyond that, again, the argument that the court actually addressed in the von Neumann opinion was about a final determination. It was about the speed to final determination in a context where there was no substantive right to avoid the forfeiture. Just to be sure I understand what your answer is to Justice Kavanaugh, is it that the due process right to the hearing is tied to the innocent owner defense, and if there were no innocent owner defense, there wouldn't be a right to a retention hearing? I think if there were no innocent owner defense, first of all, we're not asking the court to go beyond holding that there is a due process right where there's an innocent owner defense. And, in fact, we're not even asking the court to go that far because we're only asking for the methodological holding about whether to apply Matthews or Barker. I understand that, but it's a methodological question. I mean, because I think you have kind of a hard road to hoe, as Justice Kavanaugh is pointing out, when you look at the language in von Neumann in 8850. So my question is methodologically, in your view, does the court even need to ask the question whether a retention hearing is due if there's no innocent owner defense? I think it does because even in that context, I think there is a difference between the claim about a final determination and the speed of the final determination in von Neumann in 8850 versus the interim deprivation that's at issue here. But I think it's a lot clearer that von Neumann and 8850 don't speak to the question presented when, as here, you have an additional substantive right created by state law that wasn't at issue in those earlier cases. And as this court's due process jurisprudence makes clear, when states create substantive rights, that can also give rise to additional due process protections that are required. Does it even make sense to ask this question? I mean, you point out that Gerstein rather than Barker is the more apt analogy, but you don't get a hearing on the probable cause determination. So you're asking, as the state points out, for more process, more robust process in this context of civil forfeiture than a criminal defendant gets. A couple of points on that, Justice Barrett. First of all, the point of our reliance on Gerstein is simply to show that even in the criminal context, Barker is not the overarching test that applies in all circumstances. So even in the criminal context, Barker doesn't speak to every constitutional issue that could come up having to do even with timing. And just so here, von Neumann and 8850 don't speak to any potential due process claim that could be raised. With respect to the argument that under our view, the argument the state makes, that property is somehow getting greater protection than persons, there's a panoply of protections under criminal law that defendants get. In this case, and particularly where you have an innocent owner defense, there has not even been any sort of a probable cause determination made by the police at the time of the seizure about the innocent owner defense. The police here are seizing the car incident to arrest. They're not even making a determination in their own minds at that point, well, who owns the car and does that person have a probable claim of innocence. Do you think that the innocent owner defense is required by the Constitution? This court has held that it's not in Bennis v. Michigan. If the state creates that, could it allocate the burden of proof to the owner of the car? I think it could. And if you look at Alabama law, under the pre-2022 version, the burden of proof was allocated to the owner of the car, and under the current version, the burden of proof is allocated to the government. And could it say that the owner of the car must prove innocence by clear and convincing evidence? I think it could. If the retention hearing has to occur within 48 hours of the seizure, you didn't, in your argument this morning, you didn't mention a time. You said reasonably prompt. How is it practical to expect the police to be able to prove within a short period of time that the owner of the car did not know that the person driving the car was going to have drugs in the car? Justice Alito, first, I do think that reasonably prompt is the standard. The way that the lower courts have interpreted that is generally a few weeks. We're not asking for the 48-hour standard under Gerstein, although that isn't, to Justice Barrett's question, that is another example of where we are not actually asking for more protection for property than for people. What does a few weeks mean? I'm sorry to interrupt. What does a few weeks mean? So the Sixth Circuit in the Ingram case recently said two weeks. In New York for Crimstock hearings, they have to happen within 10 business days, so that's two weeks as well. I don't know that it is a rigid line at two weeks. I don't think this court needs to decide a particular day at which it needs to happen, but it needs to happen reasonably promptly on a scale measured by weeks rather than months or years, which is how civil litigation ordinarily happens. Are you asking us to decide that in this case, though? I mean, I guess I'm confused because I thought we were doing just Barker versus Matthews in terms of figuring out whether or not there is a procedural due process claim here. I didn't understand us to be answering the question how many weeks are necessary, but maybe I'm confused. No, you understood correctly, Justice Jackson. The question presented is simply about which methodology, which test applies to determine whether a hearing is due. And whichever one we decide, we could remand it for the lower court to actually apply it in this case to determine whether or not there was a procedural due process violation, correct? Absolutely. All right, so getting back to Justice Kagan's question about the Barker test, I thought that Barker was about timing and that there were, in fact, various species of due process claims that could be made, one of which is about how quickly or slowly the government has acted to give the procedure that it has said it's going to give you. And that's one kind of thing. And then, say, another is I'm contesting the procedures that the government is offering. I think more things need to be done with respect to this particular set of circumstances. That's another kind of claim. And so I had understood that Barker applies to the former when you're complaining about timing, and I saw 8850 and Von Neumann to be in that bucket, and Matthews v. Eldridge traditionally applies in the other scenario, which is what I thought the claimants were making here today. Am I looking at this in sort of too simplistic a way? I guess I'm concerned about the suggestion that Barker be applied in a situation in which the claim is not about the timing. I think you're looking at it correctly, Justice Jackson. And maybe as to the timing question in 8850, that tracks the Barker test, but we're asserting a different kind of claim here. So why is it different? I don't understand that. Yes, why is it different? The only reason you're asking for a retention hearing is to get the car back sooner. That's a question about timing. They're both questions about timing. Barker set one timing rule. The claimants here want another timing rule, which is a more generous to the claimants timing rule. I mean, it's not process for process's sake. It's process because people are without a car, and they think that they're entitled to the car, and they want the car back sooner. So that, too, is a timing rule, isn't it? You can look at it as a timing question at a general level. That still doesn't mean that these are the same questions. Take the criminal context as an analogy. You could say that the Barker speedy trial right is all about getting to a final determination quickly. You also have a separate right under Gerstein to a probable cause determination within 48 hours. I suppose in a hypothetical situation where we went from an indictment to a trial and a verdict within 48 hours, you would say, well, there's no need in that situation for a Gerstein hearing because the super fast trial in that situation mooted the separate interest in the probable cause determination under Gerstein. That doesn't mean that they aren't separate interests. So, too, here. There's one interest in getting to a timely ultimate determination. That's what was at issue in von Neumann in 8850 and for which the court analogized to Barker. There's a separate interest in retaining your property during the time that it takes to reach that final determination. And, again, hypothetically, if you had a trial within 48 hours, you wouldn't even have to worry about the interim determination. But in the real world, you do. It seems very strange that we're asking which of two precedents apply rather than what the due process clause commands. I mean, it's just a weird question presented as far as I'm concerned. And I guess my head's still stuck back at that and some of the questions that you heard early on, which is whatever test you apply, clearly there are some jurisdictions that are using civil forfeiture as funding mechanisms and say, ah, you can get your car back if you call between 3 and 5 p.m. on a Tuesday and speak with someone who is never available, right? I mean, that is happening out there. But it didn't look to me, I'll be honest, put my cards on the table, that that was the case in Alabama. And I understand your client filed for summary judgment 13 or 18 months later or whatever. But what would have impaired them from filing a summary judgment motion on day one? It's an innocent owner defense. They know the facts of their ownership of their car and how it was misused. I'm not sure I understood the reason for the delay and how it might be fairly attributable to the state. So while I'm very sympathetic with the problem that you've identified, I'm just wondering, is this the case that presents the due process problem that we should be worried about? So for one thing, I think this is the case, and the court granted cert on this question. Oh, I know we granted cert. It's all our fault. I hear you. I'm not blaming you. I appreciate it. Both can be true. But I think this is the case in which to decide how to think about that question, whether the underlying facts involve the facts here in Alabama or the facts in Wayne County in the Ingram case or the hypothetical that you gave, the methodological question about how we think about whether a hearing is required, whether or not a hearing is ultimately required on particular facts. But even if one were, couldn't you have gotten one by filing for a summary judgment motion with your innocent owner defense on day one? And if that's true, then what are we doing here? I don't know that we could have. There is no guarantee that if that summary judgment motion had been filed on day one that it would have been considered on an expedited basis. There's no evidence that the court would have done that quickly. Either way. But there's no evidence either way, is there? And I think that under Matthews, that goes to the question of what would have been the value of additional process. If on remand, the state could show under Matthews that, in fact, additional process would have done no good because a summary judgment motion is routinely granted in a matter of days in Alabama, then perhaps under this scheme there would not be a need for an additional hearing. Thank you. Thank you, counsel. I'd like to give you an opportunity to respond to the arguments raised, I think, primarily in the brief for the solicitor general that requiring retention hearings at the early period that you would will prejudice procedures under the civil forfeiture regime. So, Mr. Chief Justice, I think that the federal civil forfeiture regime presents different issues than the Alabama scheme, and in some ways the federal forfeiture regime is actually quite protective of vehicle owners. And the principal example that I would give of that is that the federal scheme has, under the federal scheme, a claimant is entitled to immediate release of the seized property if they can show substantial hardship. That substantial hardship inquiry is essentially tracking the Matthews factors. It's asking in a particular case. The solicitor general elaborates that there are all sorts of procedures necessary to support forfeiture that will be compromised by a somewhat repetitive hearing, or not whatever the precursor to make the other one repetitive is, that will require either ignoring those interests or compromising them, including such basic things as preservation of the property itself. So I think those interests are ones that can be addressed in connection with the sort of retention hearing that a Matthews analysis might lead to. If the government is concerned about preservation of the property, that is something that a judge can deal with, either potentially by requiring a bond in a particular case, by entering an order prohibiting the disposition of the property. If the government believes that the property is actually evidence relevant to the underlying crime, that's something that can be addressed in an ex parte hearing with the court, and the court can either allow the government to retain the property or can otherwise take measures in order to preserve it. Thank you, counsel. Justice Thomas, anything further? In Newman, there was a petition for remission. How similar is your retention to that? It is fundamentally different because the petition for remission is essentially, it's like a request for a pardon. The petition for remission, the premise of that is that the government has the right to keep the property, but the claimant is asking for mercy, for forgiveness, essentially. At a retention hearing, what would be assessed is, first, as we were discussing earlier, what is the probable validity of the government's right to retain the car? And then second, apart from that, and along the lines of what I was discussing with the Chief Justice, what might be the government's interest in retaining the property anyway? Or what might be the government's interest in otherwise ensuring that the property, even if the owner gets it back, is still available at the end of the forfeiture proceeding, should it be needed? Well, I understand that, but it seems as though a proceeding short of the forfeiture proceedings determination in Newman, the court said it was unnecessary to sustain constitutional stature of the forfeiture. You did not need that intervening process of remission, and I don't see how that's different from your intervening retention proceeding. Justice Thomas, I think it's because in von Newman you had the remission proceeding, but the remission proceeding was entirely discretionary, whereas here Alabama has created this innocent owner defense, which is not discretionary. It's a substantive right that owners have to retain their cars if they are innocent, and it's that innocent owner defense that gives rise to additional due process protections needed to realize the right that the state has created. Thank you. Justice Alito? Well, you just said that it's not discretionary. What if it were discretionary? Just to clarify, if Alabama had in effect created a discretionary innocent owner right, if you are an innocent owner, then the state may let you keep your car? Yes. I think that would likely not give rise to due process protections in much the same way that the remission procedure does. Could the state create an innocent owner defense but say that it can only be adjudicated at the final forfeiture hearing? I'm not sure that it could because I think at that point it's created a substantive right to the innocent owner defense, and the procedural protections that arise to protect that are questions at that point of federal law. I don't think that the state could curtail the right that way. Well, some of my colleagues may not be interested in this question, but I am interested in this question. You have asked us to say that the Constitution requires this thing called a retention hearing, so I would just like to know what is this thing that you are asking us to recognize? So how soon, what happens at it, how is it practicable for the police, and why is it necessary for the owner? Sure. So, first, we're not actually asking you to recognize that. We're asking you to decide the methodological question, and there may be ways in which... Well, let me just interrupt you because the last argument in your brief says that Alabama violated the petitioner's rights by failing to provide a retention hearing. Anyway, assume that that is part of the question. Go ahead. So, in terms of what a retention hearing looks like, I think the Legal Aid Society brief describes how these hearings have worked for 20 years in New York. In New York, it's a hearing that happens within, again, 10 business days, so a couple of weeks, at the request of the innocent owner. It is a hearing at which there are brief opening and closing arguments, and there can be evidence presented. There can be witnesses. At the end of that, the adjudicator will decide, is there probable validity for retaining the property? And, second, what are the government's interests in retaining the property during the pendency of the forfeiture proceedings? Now, to address the government's concerns about evidence disappearing or evidence potentially being actually evidence in the underlying crime, those ex parte proceedings with the decision maker, with the judge, are an available tool in that situation to address the government's interests. So, if the government comes in and says, this car might actually be evidence in the underlying drug crime, they'd probably be allowed to keep it in that situation, and that's something that could be addressed ex parte. The due process standard is flexible, including to protect the government's interests. Well, let's just take what might be sort of a typical case. So, a car, similar to the facts in one of these cases, that a car is stopped by the police. They find a large quantity of meth in the car. The person driving the car is not the owner of the car. The person driving the car is the spouse or domestic partner of the owner. And then, within a short period of time, there's this innocent owner defense, and the owner of the car, I suppose, testifies, I had no idea this was going on. And then, what do you think the state, what do you think it is reasonable to require the state to do in that situation? At a minimum, I would expect the state to cross-examine the owner of the car. And, by the way, the owner of the car would have provided that testimony under penalty of perjury. If they're later determined not to have been an innocent owner, then providing that testimony could subject them to additional prosecution just for that. Does that happen in New York City, perjury prosecutions under those circumstances? Do you know of cases like that? I don't know of cases like that, but I would also assume that people are not going to perjure themselves at the innocent owner hearing. But if the owner comes forward and testifies, this is my car and I had no idea about the wrongdoing, the government would have the chance to cross-examine them. The government would have a few weeks in which to have conducted whatever investigation they want to conduct. They would have the opportunity to make a case that way. They would also, if necessary, be able to go to the judge and say, here's evidence that we can only provide to you ex parte, so as not to prejudice any later prosecution that they might bring. They might even be able to say to the judge, again, perhaps ex parte, we're in the middle of an investigation and we need a couple more weeks, and the judge would continue the hearing. There's flexibility built into this, but the point is the due process requires some sort of an initial determination. Thank you. Justice Sotomayor? Bad facts make bad law. And I fear we may be headed that way. Justice Gorsuch started with the right question. We know there are abuses of the forfeiture system. We know it because it's been documented throughout the country repeatedly and we know it because it's been documented nationally of the incentives that police are given to seize property to keep its value, as opposed to issues of probable cause or issues of legitimacy of the seizure. We also know that that incentive has often led to months, if not years, of retention of property that ultimately gets returned to the owner because there was either no probable cause or because of the innocent owner defense. So the question before us is, if we make a determination to take the dicta in Van Neumann and in the 8-8-whatever case, all right, to say that's the entire process you're ever due, do we leave open the possibility that there are states, jurisdictions, that are abusing this process and not leaving us any arms to correct it? That's what we're doing, isn't it? If we say there's no overriding first question, is this process, the features of this process, are they enough, whether it's under Matthews or Barker, then what we're basically saying is go at it, states. Take as much property as you want, keep it as long as you want. Let's hold out no hope whatsoever that there's ever going to be any further process that's due. That's the bottom line, right? I think that's right, Justice Sotomayor, and I think that the court should hold here that Matthews is the way to analyze the process. I know that's what you want, but the point is that if we take that dicta in a case where none of the process itself was at issue, it was a separate process that was at issue, or timing of that process, none of the features of the process is at issue, as binding on us, we're throwing up our hands and saying, the due process does not give people any protection whatsoever under any set of circumstances. I think that's right, and I think the court shouldn't do that here, regardless of the fact. I also think on the fact, and I don't want to wear out my welcome, but I also think... You are wearing out your welcome, because like Justice Jackson, that's not the question before us, whether the process here was enough or not. That's right. I do think that there are explanations for the timeline that took place in this case, but the court doesn't need to reach that. All the court needs to decide here is that von Neumann in 8850, as you say, Justice Sotomayor, didn't foreclose any and all potential due process claims that one might bring, and Matthews is the way to think about whether additional process is due in this context. Now, after Cremstock, there are jurisdictions that have looked at these issues under the Matthews test and not required retention hearings, correct? Right. There are different ways in which states might potentially satisfy due process. It doesn't absolutely have to be a retention hearing. That's what I'm saying, which is it depends on each state's assessment of the factors that Matthews looks at, correct? That's right. And some have not. Some have required others, given the uniqueness of their jurisdictions, correct? That's right. Thank you. Justice Kagan? Can I just ask you to clarify that? Because I was confused when I read your brief about how exactly you want Matthews v. Eldridge to work, whether you want it to be a determination in each individual case, as to whether under the Matthews v. Eldridge factors, a retention hearing is required, or whether Matthews v. Eldridge operates to set up certain categorical rules. And if so, what those categorical rules are. Are they likely to be sort of state-by-state rules? You know, how does Matthews work in this context? Justice Kagan, I think it does apply at a more categorical level, and that, in fact, is one of the advantages of Matthews over Barker, is that it can apply at a more categorical level and provide some guidance to the states, whereas Barker is inherently retrospective and looks just at the individualized delay in one particular case. The categorical level at which I think Matthews applies, it would make sense to think of it about car owners in jurisdictions with an innocent owner defense. I think that's the level at which it applies. But it's not a nationwide rule that would require a precise copy of Crimstock hearings in all 50 states. It would allow flexibility for states under Matthews to come up with different ways to potentially satisfy the due process guarantee. Again, the question is, is there a due process question even to ask? And Matthews tells us that there is. Justice Gorsuch? Justice Kavanaugh? Just on that methodological question again, the other side, of course, emphasizes precedent, but they also say that what processes do can't just be a policy question. And they look as well at history, and they say that historically this kind of interim hearing has not been required by the federal government or the states given lots of different approaches. And they say that even today, Alabama is not an outlier. There are lots of different approaches in the states. The states' amicus brief really highlights this. So they say if we went your way, we would be constitutionalizing a policy question that for over 200 years has been left with the states and the federal government handled in different ways. So I just want you to respond to that overarching theme that I think is in the Solicitor General's brief and Alabama's brief and the states' amicus brief. If I could make two points in response to that, Justice Kavanaugh. One, as we've been discussing, our rule does – the application of Matthews would allow for some amount of continued flexibility by the states. We're not asking the court to dictate a national rule that a particular type of hearing is required within a particular time period. There will still be room for states to experiment and to customize what they think is an appropriate time and an appropriate kind of hearing, or perhaps even a substitute for a hearing like a hardship determination that could potentially be made based on a paper filing. So we're leaving room for flexibility. Second point with respect to history. I don't think the history provides a clear answer for us here. First, at common law, property could be forfeited regardless of whether the owner was innocent. The innocent owner defense is something that didn't exist at common law, and again, that gives rise to new procedural protections. Second, as Justice Thomas explained in his Leonard v. Texas dissent from denial, historical forfeiture laws were quite limited. They were limited to a few specific subject areas like customs and piracy, where it made some sense to think about in rem proceedings. Civil forfeiture today bears little resemblance to that. As Justice Thomas also pointed out there, there's some question about whether a common law forfeiture was civil or criminal and whether it carried the additional protections of criminal process. At the founding, forfeiture proceedings had to move quickly. The IJ brief and super justice brief explains that courts had to rule within 14 days of the filing date at common law, and so again, you didn't have this sort of question of months or years long delays. Okay. Well, keep going then. I don't want you to keep going forever. The only last point I was going to make is that forfeiture at common law was also considered against a backdrop that the founders had of distrust to civil forfeiture generally. Based on what the British were doing before the revolution. I'll end it by just saying the early federal statutes seem somewhat inconsistent with that, but I'll leave that. Thank you. Justice Barrett? I have a similar question to Justice Kavanaugh, so I don't think it will require a long answer. Do you agree, so Judge Sipar in his concurrence in the Sixth Circuit said, well, listen, Matthews doesn't apply, you know, drawing on cases like Hurtado, if there is a defined historical practice on point. Do you agree with that, or do you think Matthews would always apply? I understand you think that the history isn't determinative here, and it seems to me like that's kind of, do you go with the Constitutional Accountability Center's amicus brief or the municipal lawyer's brief, the count on the history. But just methodologically, do you agree with Judge Sipar's reading of Matthews and our precedent about history and procedure? I think that if there is a precise answer to the question in the history, then the history would probably govern, but I think we're very far from that, very far from that in this case. Thank you. Justice Jackson? And is it your position that the application of Matthews would necessarily always mean that some additional procedure would be required in a situation like this? No. The application of Matthews could lead to a conclusion that the State's existing process is sufficient and that no additional process is required. Okay. And, you know, I was surprised a little bit, I think, about your answer to Justice Thomas about von Neumann and why, if at all, remission is different. I had thought that it was not because it was discretionary. I thought it was because the case seems to make pretty clear that it is an administrative alternative to judicial forfeiture under the statute at issue in that case. And so, given that, you know, the owner was complaining about it not happening quickly enough. He chose the option of remission rather than forfeiture, and he wanted the remission hearing to happen quickly. And the court, I thought, in the language that has been quoted, was making a much more narrow point, which is just that this remission is not a part of the forfeiture hearing. It's not required by due process. And so, therefore, you don't have a claim that it has to be faster under the Constitution, that really forfeiture is where due process lies in terms of your constitutional rights. But, of course, that doesn't tell us what steps are necessary in a forfeiture proceeding. But to the extent that this language is talking about forfeiture being the only thing, I thought it was relative to the alternative administrative remission process. Am I misreading this? No, and I don't think we're disagreeing. I would simply add the point that this alternative administrative process didn't create any substantive rights because it was discretionary whether the government would give you back your property or not. True, but it's also the case, I think, from this case, that the court then goes on to talk about how remission is not a part of forfeiture, how those are two different things. And so the language, I thought, was just distinguishing forfeiture from remission as opposed to telling us something about the nature of forfeiture, that it's only the forfeiture hearing and you don't get other steps or whatever, which is the way it's being read, I think, by your counterparts on the other side. No, I agree. I think that's also a relevant distinction of fondament here. All right. Let me finally just ask you about, again, the timing and whether, you know, I think there is something to this notion that Barker is about timing. But, again, the question remains, isn't the claimant in this case making a timing kind of argument? And I guess I see that, but can you help me with the following hypo and then maybe I'll also get the reaction on the other side. So if we have a scenario in which everyone agrees that the average time for a forfeiture proceeding is, say, six months after the seizure, and everybody agrees that that is reasonable for due process purposes, plaintiff number one doesn't receive her forfeiture hearing until 12 months after the seizure, so her claim is that the government was too slow in giving her the hearing. Meanwhile, plaintiff number two receives her hearing in six months, but she claims that at some point within those six months there should be an opportunity for the court to consider whether she should have been allowed to keep her car during that interim period. She's not complaining about the time. Six months is fine. She got her hearing within the six months. But what she's saying is, while you figure out during that six months who owns this car, I should keep custody of it during that period, and I think we should have that adjudicated separately from the forfeiture hearing. Are those two different things, or are they both really about timing? No, I think those are two different claims. The first one is claiming I didn't have a fast enough final merit determination. The other one is claiming, look, the final merit determination was fast enough under the circumstances, civil litigation takes time, but I shouldn't be deprived of my property during the pendency of that. And, again, it's like the criminal analogy that I used earlier. You wouldn't say that because you have a speedy trial right, and that's going to take a year, that you don't also have a Gerstein right to a prompt probable cause determination. And in a situation where, hypothetically, the trial did happen within a matter of days, that might moot the probable cause hearing, the probable cause determination, but it wouldn't mean that conceptually you don't have two separate rights. And you could have two separate tests depending upon the claims. Correct. With the Barker test, correct. Thank you. Thank you, Counsel. Mr. LaCour? Mr. Chief Justice, and may it please the Court, forfeiture has been a critical tool for deterring crime since before the framing, and both history and precedent show what post-seizure processes do to those whose property has been seized. From the Collection Act of 1789 in Slocum to 8850 in Von Neumann, the answer is clear. If the forfeiture proceeding is instituted and concluded promptly, then the forfeiture proceeding without more provides the post-seizure hearing required by due process. Now, petitioners assert that another post-seizure hearing is required, a mini-trial mere days or weeks after seizure, and in their telling, the federal government and the states have been violating fundamental rights for centuries with no one noticing until just a few years ago. But their view cannot be squared with history or precedent, and their own cases show why a timely forfeiture proceeding is the meaningful opportunity to be heard at a meaningful time. Only the timeliest test embodied in Barker v. Wingo accounts for the striking diversity among forfeiture cases. Some will be simple, and others will involve wide-ranging investigations. Some claimants will vigorously press their rights, and others will default. As long as claimants can appear before judges promptly, then judges can strike that proper balance in each fact-found case. I've heard my friend today say, essentially, don't trust judges to be judges. And so instead they invoke Matthews to have federal courts act as legislatures, handing down new rules of civil procedure for all 50 states and the federal government. But Barker best accounts for what should be the dispositive fact in these cases, that petitioners were before state courts within two weeks of seizure, yet they ignored that process for over a year. Petitioners receive all the process they were due, and this court, therefore, should affirm. I welcome the court's questions. But you criticize the use of Matthews, but Barker is a speedy trial act case. So that would seem to also be an ill fit for determining whether or not you should have an additional hearing. I don't think so, Your Honor. In 8850, the court considered multiple ways to measure speed. And the Barker factors are exactly the sorts of factors you would imagine any judge would look to whether or not Barker had ever been decided. How long has this taken? Why has it taken so long? Is the claimant pushing her rights? And has there been any prejudice? So I think it makes sense why 8850 adopted that test, and I don't think petitioners have asked for it to be set aside in this case. So it should not be set aside. It seems that petitioner is not talking as much about a timing issue as whether or not there should be an additional right vindicated. And Barker seems to focus on timing as opposed to whether the additional right exists at all. That's right, Your Honor. I think one advantage of Barker is that it really draws from history. If you look at 8850, they looked back to Slocum, that 1817 decision from this court, where the court recognized that while probable cause is enough to justify seizure and retention until trial, the individual's right is best protected by forcing the government into court. And if the case is instituted promptly, then the judge can decide what it takes to move that case along promptly, balancing the government's interest in accuracy and its other interests with the claimant's interest in speed. You seem to be suggesting that there is no other kind of claim that can be made related to forfeiture other than its timing. And I guess I'd have you react to the hypothetical that you heard me provide to your counterpart. I think it's really the same question. The way Ms. Vasquez in 8850 teed up her claim was whether or not she was receiving a hearing at a meaningful time. Not in 8850. I'm talking about in this case. I agree with you that 8850 and von Neumann were both about the timing. The court says in the first sentence of von Neumann that this is about the 36-month delay. But are you saying that that's the only type of procedural due process violation that can occur with respect to civil forfeiture? I think that's what the court tells you, Your Honor. Again, the interest is the same, having the car and not being temporarily deprived of the vehicle. No, not being permanently deprived of the vehicle is different from not being temporarily deprived of the vehicle. But Mr. von Neumann's complaint was that temporary deprivation. Let's put it this way. Due process has various components, you'd agree. One component is how quickly your claim can be heard. Another component would be what procedures your claim is going to be decided pursuant to, right? Yes, Your Honor. So there's a substantive aspect to it. Wrong word. Idea, though, that the procedure has to have some robustness to it. Okay. So, for example, if I said, oh, I got a quick hearing, but I had to call between 3 and 5 p.m. I had to speak to Sam, but Sam turns out is on permanent vacation. Okay. But I can get a quick hearing. I can get it the next day. But that's what I have to do to get it. Or I get it in front of a kangaroo court. And the judge turns out to be wholly biased, for example. And I can prove it beyond a shadow of a doubt. Those would all be due process issues besides how quickly I got to court, right? Yes, Your Honor. Okay. So I get the barker. It's all about speedy trial act. It's right there in the title. It's all about timing. And that certainly is an important component of due process. But I think your colleague on the other side suggests I'm arguing more about the kangaroo court stuff, too. And what's happening around the country, as Justice Sotomayor pointed out, I'm not accusing Alabama of this, to be very clear. Thank you, Your Honor. Okay. There are arguments to be made that there are attempts to create processes that are deeply unfair, and obviously so, in order to retain the property for the coffers of the state. And I think Justice Sotomayor is concerned that we are not, if we go down the barker road and just focus on timing, we're losing that capacity to address those cases. Am I putting it fairly? Long-windedly, but fairly, I hope. A couple points. There's no, just as in 8850, there's no argument that the final hearing they received here was a kangaroo court. It was not in any way sufficient. For sure. But could those claims, do you acknowledge there might be claims like that to be had? There may be, Your Honor. I think barker answers them. If you're requiring someone to reach Sam between 3 and 5 o'clock, that's not a very good reason under barker 2 for the delay. No, but let's say it happens really quickly, but it's a kangaroo court, an unfair adjudication. You and I would agree that that was wholly and grossly unfair. Yes, Your Honor. I think we're far removed from that. Of course we are in your case. Of course you're going to say that, and I understand that. But your argument would seem to strip the courts of tools to deal with those kinds of cases. I don't think so, Your Honor. Help me write it so that we don't do that. If you acknowledge that's a trap. Your Honor, because in 8850 and in von Neumann, the final hearing is going to be by a federal judge. You can trust that they are going to uphold the Constitution. They're going to do justice. We shouldn't craft a test that suggests otherwise. Similarly here, the final hearing is going to be in front of a state circuit court judge. So we're not dealing with the kangaroo court scenario. I think that's far removed. Now, you might have that in the administrative law context, like in the Social Security context, and that's where Matthews might be a useful test if you're writing on a blank slate. But here we're dealing with the process as well as the country. Two litigants coming into court in front of a judge and adjudicating their case. And that's why Barker is enough in that context, because the judge is going to be best situated to balance that need for speed with the need for accuracy. So if someone has a relatively simple case and they say, Your Honor, I want to move to expedite. I want a hearing in two weeks. It's going to be incumbent on the government to come back. Let me see if you're comfortable with this. So long as the processes that are ultimately given are of the sort that are traditionally used for forfeiture and are reasonably fair and comport with traditional due process principles. Yes, Your Honor. Something like that? Absolutely fine with that. That's how it functions in Alabama. General, I mean, maybe that's not enough. I mean, I'm sympathetic to your point that the question here is pretty similar to the question that we've been dealing with in the two cases, because they're all how long is it going to take till I can get an adjudication so that I can get my car back? And that's what they're all about. That's why people want this retention hearing, because it takes too long, even under Barker, to have the final adjudication. I want it back more quickly. Totally right. But we, in fact, have not decided this precise question. We have a couple of sentences which were written broadly and, if taken literally, would answer the case. But, in fact, the two cases that we had were about different kind of procedures at a different time in the process. And so we could say that even though there are similarities here, this remains open to us to decide whether there ought to be, in addition to the Barker limited final adjudication, this kind of retention hearing that applies to the interim period. And I think Justice Sotomayor raises a very important point, which is that we know a lot more now than we did when 8850 and the other case were decided about how civil forfeiture is being used in some states, about the kinds of abuses that it's subject to, about the kind of incentives operating on law enforcement officers that tend toward those abuses. So if we look around the world and we think there are real problems here, and those problems would be solved if you got a really quick probable cause determination, why shouldn't we do that? Well, Yara, I would advise you to stay within the record of the case and the controversy that's in front of you right now, where you can see ample process was provided to these claimants. We haven't even mentioned the bond that they could have posted at any time to get the vehicles back. And as you were noting earlier, my friend on the other side, they're essentially just asking to have the final hearing two, three weeks after, and that's going to cause serious problems for the government. You will gain speed, but you will lose accuracy, and the stakes are very high in the civil forfeiture context. The government, of course, has a strong interest in obtaining full forfeiture. We have a strong interest as well in making sure that crime doesn't pay. And so if you have a less accurate retention hearing, and that's really the only reason to have one, is to have a mini-trial that's less accurate but is faster, then you're going to have more property released to criminals. It's going to potentially be misused again. Crime will pay more and you will have more time. I'm sorry. Why? First of all, I doubt very much that criminal defendants from whom cars have been taken are going to seek a retention hearing because whatever they say will be used against them in the criminal case. I don't think New York's experience reflects the use of these retention hearings by criminals or by people from whom the goods have been taken that are tied to criminal activity. These cases are most important for one group of people, innocent owners, because they are people who claim they didn't know about the criminal activity. Many of these cases involve parents with teenage or close to teenage children involved in drug activity. The ones that don't may involve spouses or friends. I assume in many of these hearings, to the extent that a person is involved in drug dealing, that the government pretty quickly will find out or not find out if that person has a relationship to a home or other place where drugs are being stored, distributed, etc., and the government can do what your opposing counsel said, export a hearing saying this is a wife who claims she's an innocent donor, but we have evidence that there's drug dealing going on from the home. If it's someone who's unrelated and no continuing relationship, etc. So you're talking about criminals keeping these cars, but given that the vast majority, I believe the statistic was very high, certainly over 60% of innocent owners win, it is not criminals keeping cars. It's innocent owners receiving back their cars months if not years later. So where does the Parker factors take those interests into account? They don't. Your Honor, I think they do. I think my friend almost conceded that they do by saying if they had moved for summary judgment on day one, they probably would have had their car back sooner. The Parker factors have three. They have all government interests focused. I would dispute that, Your Honor. The length of delay clearly takes into account the interests of the private party. Being deprived of your car for 14 days is a less significant deprivation than being deprived for 400 days. No, but you're still building in massive delay. How about three months when it's hardship? Where does that go into the Parker factors? Your Honor, there may be circumstances where Parker needs to be applied with more teeth, but I don't think that means it's not up to the task. But why don't you see the Matthew factors as that more teeth? Matthews is just more explicit of adding in the, I guess in this case, the petitioner's factors. Parker seems to be with timing and seeing who caused the timing. What were the government's interests? The government's interest is always going to be great, but where does Parker take into account the hardship of the individual? I think, again, you get in front of a judge quickly. The judge can do equity, can move the case up faster. And this is the advantage of Parker. The disadvantage is that that process is very discretionary. I think one disadvantage is that it asks federal judges to try to project into the future what the next typical thousand forfeiture cases are going to be like when we're dealing with cars and guns and cash and pirate ships. I'd like you to point out to me one of these cases involving guns, money, or what were the others? Putting cars aside. There are a lot of older cases involving pirate ships. Pirate ships. In which of those cases were those things released immediately? I think that's the point. They haven't been at history. They haven't been because, as I mentioned, people involved with guns, people involved with money, people involved with other things just rarely want to come into court for a retention hearing if they have a criminal proceeding in place. The people who come in are the people who are innocent owners. Your Honor, I think a claim like that would need to come from my friends and would need to be backed up with evidence. And it's not uncommon, as courts have recognized, that criminals oftentimes do put title of property in someone else's name and that someone else can come forward. Not every purportedly innocent owner is innocent. And not everyone is even an owner. And this is another problem with rushing this hearing is that someone could come forward and claim ownership but not actually have proper ownership. And if it's happening too quickly, then the actually innocent owner may be out his property and it's not going to be there at the final forfeiture hearing, which is why the government has always had this authority to seize before a hearing in the same interests that have long justified seizure before a hearing justify not turning the stuff back over immediately after the seizure but rather holding it until you can have a prompt but accurate final hearing. General, can I ask you to respond to Petitioner's argument that the historical analogs are not actually analogous here and that we don't have any settled tradition of having a single forfeiture hearing? I would expect to have seen a mini-trial or a remission, or not remission, a retention hearing somewhere in history. But we do not have that. And if you contrast that with the liberty interest, Justice Scalia's dissent at the County of Riverside highlights how there always was this right at common law to be presented to the magistrate right after the arrest. But there's not similar evidence when it comes to property, and that's because property and liberty are very different. But Justice Kagan pointed out there are new kinds of property that arise and there are new kinds of procedures and that things have shifted and maybe the final hearing itself happened in much closer proximity to the seizure. That was Petitioner's suggestion. So what do we do then if we think there is no precise analog? I think you're still speaking in the language of speed, which is the language of Barker, which is, again, why we think Barker is the test. It is the historical test that carries that forward to today. Institute promptly, conclude promptly, and then let the judges who are on the ground with the parties in front of them weigh those competing interests. And when it comes to this affirmative defense of innocent ownership, I don't think that changes things at all. It's actually very similar to the argument that Mr. von Neumann made. He said he had an independent interest in this remission petition, and the court did assume for purposes of deciding Part 3 that he did, and the court said we don't see how that separate interest, apart from the cars, is in any way prejudiced by this 36-day wait. And the same thing is true here. This separate interest apart from the cars in raising affirmative defense is prejudiced not at all by being held or being heard for the first time at the final hearing as opposed to two weeks after seizure or two days after seizure, for that matter. And if you look to the criminal context, there are affirmative defenses there that typically don't get heard until the criminal trial. So clearly, affirmative defenses can be meaningful even if they don't get put before a court until the final hearing. And the same thing is true in civil context. I'm sorry, what is your conception of the interest that this petitioner is raising is the ability to make her affirmative defense early? I don't understand where affirmative defense came from. They say that this case is somehow different because there's now an innocent owner affirmative defense. But that same argument was pressed by Mr. Von Neumann when it came to the remission petition. He said, I have this independent right created by federal law to get a remission petition decision. And the court said that right received all the process it was due by this 36-day process in deciding that the same thing is true here. Their right to claim innocent ownership was heard and was vindicated at the final hearing. There's no need for it to be heard two days or two weeks after seizure in order for it to comport with fundamental fairness. Thank you, counsel. Justice Thomas, anything further? Justice Alito? Justice Sotomayor? Can I go back to this common law issue? We do know that in English, common law provided post-seizure process separate from the final forfeiture hearing. The fourth, restore the fourth brief lays out that very robust history. We don't have a similar history in early American courts for all the reasons the opposing counsel raised and Justice Barrett made clear, largely because except for pirate ships and some isolated other types of seizures, we don't have a robust forfeiture process until the 1970s. So going back to her question, which is if the common law doesn't have a clearly established process, does that mean no process is ever due? Or does it mean that we have to judge it by the circumstances that exist in modern times? I would think it's the latter. Forfeitures were quicker earlier in our history. Forfeitures were rare, and now we've expanded them to all sorts of property interests, even those involving innocent donors. It's a new thing. So what do we do with that old clear common law analog? I think the history is a lot clearer and a lot clearer in our favor than the restore the fourth brief would make out. We agree with a lot of the premises that in Slocum, and I think it was an early judge-handed decision saying you need to institute or return. That sounds like Barker to me. Institute promptly, conclude promptly. There is not a history of a mini-trial, despite the fact that you do have this history in the liberty context of something like a precursor to the Gerstein hearing. So I think that absence of evidence is evidence of absence. We do think that how courts were protecting the individual right tells us what is demanded today, but not more is demanded as long as it's included. Justice Kagan? Justice Gorsuch? Thank you. Justice Kavanaugh? A couple things. First, you agree that Barker takes account of the claimant's interests, hardship, etc., correct? Yes, Your Honor, if you're in front of the judge quickly. In the first Barker factor, is that right? Yes, Your Honor. If you get in front of the judge quickly, he can consider all those factors. And then on Barker and Matthews v. Eldridge, the Solicitor General in particular suggests that those really are ultimately the same, materially the same thing in this context, ask the same questions. Do you agree with that or not? We see a little more daylight between the tests, but we do agree that in these cases, they would cash out the same way. That's what the Southern District of Alabama held in Ms. Coley's case, that under Matthews or under Barker, she loses. And suppose we have no precedent on point, and suppose we have no idea what the history says, just a complete blank slate. And suppose we're doing Matthews v. Eldridge, and we're purely in Matthews v. Eldridge land. How do we decide whether the new hearing is necessary or not? We're supposed to weigh the government's interests against the individual interests. Yes, Your Honor. I would point you to this court's opinion in Cayley, for example, where they looked at the significant interests the government has in not having to try their case repeatedly. And it's bolstered in the forfeiture context because, again, movable property can disappear. It can be hidden. It can be misused again. You don't want to turn the car back over to someone who's just allowed it to be used to traffic methamphetamine because there's at least better than zero odds that it might be misused again or disappear. So we think the government's interests are very strong here. And then it's not clear what additional process is really going to be provided when that retention hearing is going to look a lot like the final hearing, except for the fact that it's going to be rushed, and therefore the risk of error is going to increase. And then that risk of error is not just a problem for the public. It's a problem for the other actually innocent owners if a merely purportedly innocent owner makes off with the property because of the error. Just to finish it out, and you would have us just figure out whether we agree more with the government or the individual on that, which interest outweighs the other, or we just have to make a policy call on that? Yes, and I think that's part of the problem with Matthews. And it's not all that predictable. The Second Circuit and the Seventh Circuit, just in the context of cars, said you do get the retention hearing. And the Fifth Circuit and the Southern District of Alabama, in this case, said you don't get a retention hearing for cars. So it doesn't really give us a whole lot of guidance. Thank you. Thank you. Justice Barrett? Justice Jackson? Well, Barker has factors, too. I mean, is there some evidence that Barker's factors are more predictable or lead to results that are more consistent in some way than Matthews? Your Honor, it's more fact-sensitive, and my friend would see that as a drawback. I think that's actually a merit. More fact-sensitive than the factors in Matthews? Yes. Petitioner's counsel said just a few moments ago that Matthews allows you to do these categorical projections into what the typical case is going to look like in the future so that trial judges can be told, make sure you have a hearing within 14 days no matter what the facts show you. And we don't think that's very flexible at all. We would prefer a test that allows trial judges to be trial judges and weigh the cases as they come. Okay. So you're saying even though your argument is that both Barker and Matthews come out the same way here, somehow an application Matthews has is deficient vis-à-vis Barker. Barker's the better, easier way to go? What is better about it? Again, it's fact-sensitive. No two property cases or movable property cases in the forfeiture context are going to be alike. You have lots of different types of property. Even the same type of property can have different values. And I thought that was what Matthews allowed for, but you're saying that's, in your view, that's what Barker. The way Matthews has been applied in the Second Circuit has been to really alter the rules of civil procedure for every case going forward, whether it's a case where the claimant would have defaulted anyway. I'm not talking about how it's been applied, letting judges be judges. I'm talking about the test itself. Is there something about the factors in the Barker test that is more determinative, allows us to be more predictable about what's going to happen, other than, I guess, the view that you'll never get any other process. If that's the result that you think Barker always points to, then I guess it is more consistent than Matthews. Yes, I think it's a little more specific in describing the government interests. The government has to explain why there is a delay. And then you're looking at the key factor, which is how long has this taken. All right, so just finally, getting back to Justice Gorsuch's point, is it your argument that plaintiffs are not allowed in this context, by that I mean the civil forfeiture context generally, to assert that the forfeiture procedures themselves are deficient? Not making a delay claim, I'm conceding, says the plaintiff, that the forfeiture hearing is going to happen or has happened in a timely fashion. But I would like to complain about the procedures that were given to me in that context. Is it your view that no such claim can be made? Your Honor, if the claim, for example, was that the judge who's sitting over my case is biased against me. No, not that claim. I don't want to make it kangaroo court, because that's hard, and it'll go back to the question that Justice Gorsuch asked. I want to make it something else about the process that is unfair. You know, these involve, as Justice Sotomayor says, people who say that they're innocent owners, that they own the property and that they knew nothing about the drugs. So the state has a system, this is a hypothetical I'm making up on the spot, the state has a system in which the manner of proving that the person knows about the drugs is very unfair. The state says we presume that if you know this individual, then you're aware of their drug activity. And since this person is your son, you obviously know them. You can't bring in any evidence that shows that you didn't know anything about it. You're not an innocent owner under that test. And what the owner would like to do is say that you can't have a system, you can't have a method of proof that is so unfair in terms of my ability to prove that I didn't know what was going on. That's my challenge. Not that the hearing took too long, it has nothing to do with speed. I want to make that kind of challenge. My question is, is it your view that no such claims exist? And if they do exist, are we judging the due process by the Barker test or some other test in that situation? I think this court's decision, District Attorney's Office v. Osborne, would suggest that if you've created a new procedural right, then yes, there's some due process protections that attach. The state has a tremendous amount of discretion in terms of what processes are going to attach to that new procedural right. Understood. So if you agree that the person could make such a claim, are you saying the Barker test would apply in that situation to determine the ultimate due process question? It doesn't sound like that's a timing issue, so probably not, Your Honor. But again, in this case, the issue is they've had my car too long, and that's a timing question. Thank you. Thank you, Counsel. Ms. Reeves? Mr. Chief Justice, and may it please the Court, I think it may be helpful for me to lay out how the federal government sees this case. In our view, the Court has already found, as indicated in 8850 and Don Newman, that the only process a claimant is entitled to after personal property is seized is a timely final forfeiture hearing. If this Court is of the view that it has not yet addressed that issue, it should now, and it should hold that a claimant has no right to an interim post-seizure hearing. History and tradition support that rule. At the time of the founding, there was no right to an early hearing when property was seized. Only a timely forfeiture hearing was required. That approach has prevailed for nearly 250 years. The hearings that petitioners request would upend that history, be extremely onerous, and would require more process for the pretrial deprivation of property than the pretrial detention of persons. Finally, the government disagrees with our frontline position. While we think that 8850 is the better fit for petitioners' particular claims, the government is largely ambivalent about whether Eldridge or 8850 applies to determine whether an interim hearing is required in a given case. But either way, this Court's decision should emphasize that the public and government interests identified in 8850 and Pearson-Yacht will often weigh strongly against allowing such a hearing. I welcome the Court's questions. Ms. Reeds, there have been quite a few questions that say maybe something substantively goes wrong in this process. How would you address that, assuming that the forfeiture proceedings are timely? I think if there was some sort of question that an individual wasn't receiving due process in the course of the proceedings, so some sort of procedural irregularity, I think there could be a due process claim for that. It wouldn't necessarily be governed by Eldridge or even 8850. It could be governed by just the closest civil law analogy. Like if there's an inappropriate burden of proof being placed on someone, I think that there might be due process analogies for that. But that wouldn't be solved by requiring an additional layer of proceedings in all cases or in a significant category of cases. That's just a different issue. The assessment whether a civil forfeiture proceeding meets the requirements of due process, timeliness is a significant consideration in that, right? Yes, it is. And it is, of course, in retention as well. Yes. But there's presumably a gap between when you would have that question asked under retention and when you would have it asked under civil forfeiture. How do we look at the significance of that gap? I think the court would look at that under 8850 because 8850 allows the court to take into consideration the burden to a particular claimant in a particular case. I think that comes in under the first factor in 8850. And I think the government interests really aren't any different. This court's talked about the government interests in Pearson Yacht in not having a pre-seizure hearing. And I think most of those government interests continue to apply to allow the government to retain the property while the hearing is proceeding, as long as the hearing is proceeding in an appropriate amount of time and the government isn't sitting on its hands and doing nothing while holding someone's property. And I think the history and tradition really are consistent with that. The best evidence of the history here comes from the Collection Acts, which were passed by founding-era Congresses. There was no requirement that there be any sort of interim hearing. The normal rule was that once property was seized, it was held until the final forfeiture hearing. And Petitioner's Council has suggested that once the forfeiture proceeding was filed, there was a 14-day hearing requirement. That's just not the case. So first of all, under the Collection Acts, the federal government had up to three years between seizure and initiating the forfeiture action. And then... Did you decide any of that in this case, given that under your account and the state's, the petitioner here could have brought a summary judgment motion at any time? And presumably most of the facts that she would have wanted to present would have been in her control. So I think that's right. You could issue a very narrow decision in this case. What would it look like in the government's view if we were to want to avoid ruling on that question and also leave open the possibility, as you alluded to with Justice Thomas, that there may be due process considerations beyond timing that might arise in some of these cases? I mean, there are allegations before us that in some states, because law enforcement uses these forfeitures to fund themselves, that they sometimes require somebody who wants some of their property back to agree to give some of it to the government or engage in other concessions outside of regular process. How do we write a narrow opinion that does no harm here? I think the court could say that we haven't decided whether there's ever any entitlement to an interim hearing, but assuming that there could be such a requirement in some category of cases, it clearly would not... Petitioners were not entitled to that sort of hearing in this particular case. Now, there may be some dangers in kicking it down the road. I think there will be other petitions coming up because of the Sixth Circuit's decision and even coming out of Crimstock, but the court definitely could save this for another day if the court wants to. I thought you were going to say that we could say that there's no due process right to an interim hearing, period, but there could be other due process issues related to other aspects of forfeiture proceedings and you don't need to rule those problems out by saying there's no due process right to an interim hearing. That's certainly our preferred rule. I think I was assuming that Justice Gorsuch wanted a much more limited rule that just dealt with the facts of this case, but as I said in my opening, we certainly think the court has already indicated that there's no due process right to an interim hearing. So what do you see Barker being if it's not an interim hearing? I mean, Barker, a petitioner comes in, makes a motion and says, I'm entitled to a Barker hearing. The government claims this interest, but I have hardship and I want a hearing on the level of my hardship versus their interest and their level of proof because your brief seems to argue that the Matthews test is fully consistent with and would not require any material changes in the court's traditional Barker-based analysis. That's your brief at page 19. So a due process does require Barker hearings. That's what we said in 8850, and basically you just don't want to call it a retention hearing. So I think I want to be clear where we are in the analytical framework here. So we don't think there's ever a right to an interim hearing. We think the only right that there is is a timely final forfeiture hearing. And it's certainly true that someone whose forfeiture proceedings are ongoing can say, look, this is moving too slowly under Barker, and the court can set its deadlines accordingly, can dismiss the case if it's already proceeded for too long a period of time. And we've also suggested that in this particular case where the claims really are just about timing, petitioners haven't alleged there wasn't due process to seize their vehicles, they haven't complained with a final proceeding, they concede in their reply that sometimes a final forfeiture hearing could happen quickly enough, that when the claim really is about timing, that there's going to be little difference between applying 8850 or Barker to that type of claim. But I guess you keep saying timely. I don't know what timely is. I have a brief that set out the fact that some hearings, by the nature of what the courts are doing, are taking up to a year or more. I don't consider that timely if I'm an innocent owner who relies on my car for survival. And there's evidence of claimants who, in fact, had children who lost their job, et cetera. So how do we take care of those things? So I think if you're concerned about that sort of thing, the claimant can raise the concern that the proceedings are already taking too long in their ongoing forfeiture proceedings, or if the forfeiture proceedings haven't been filed, they can file a Rule 41G motion in the federal system or a Rule 313 motion in the Alabama system. So there are ways to bring the timeliness game up to a court without requiring a retention hearing in all cases. And I think one important thing to keep in mind, a petitioner has focused extensively on the fact that there's an innocent owner defense at play here and that that somehow means that there's an earlier entitlement to a hearing. And Alabama law, the version of law that was in effect for this case, makes it clear that that is an affirmative defense. That's in Wallace v. State, which is cited on the first three articles. Is that part of its new law? Excuse me? Is it part of the Alabama new law? It is not, no. The Alabama new law, of course, is not an issue in this case. And the version of the innocent owner defense that's at issue here only comes in after the state has made out its prima facie case. Quite interesting, isn't it, that once the incentive is taken out of police officers taking advantage of the system as it exists, that Alabama puts in a system that is much fairer. That was one of the reasons that Alabama resisted granting cert in this case because the new system does look to guarantee a faster process. So I think the new system's processes are different, but I think it's important to keep in mind that I don't even think the new system's process would have given these petitioners faster process. So the innocent owner defense under Alabama's new law, once an innocent owner seeks an innocent owner hearing, the state has up to 60 days to respond to that. And that's almost exactly the amount of time that petitioners would have had their cars returned to them had they proceeded under Alabama's state law as it has existed at the time of this case. Thank you, Counsel. Justice Thomas? Justice Alito? Anything further, Justice Sotomayor? Justice Jackson? Can I just clarify one thing? You say that you think that the only right is to a timely final forfeiture hearing, but I thought what was at issue in this case is the test that is to be used to make that determination. So I appreciate that the government thinks it knows the answer in all of these cases, which is, you don't get a hearing. But I thought we had tests that we applied in the law to lead us to that conclusion in particular cases depending upon the claims and the circumstances. And so our question was, what test? Am I wrong? It feels to me strangely like the government has picked the answer and is choosing the test that will inevitably lead to the answer that the government wants as opposed to telling us, here is the difference between the Barker test and the Matthews test and which one is better in terms of more consistent with our prior case law, et cetera, et cetera. So I think we view the answer to the question presented as being it doesn't matter because the court has essentially already decided this in von Neumann in 8850. What is your view of my thought that von Neumann is really much narrower in the language that you're talking about than the way it is being read, that it's been taken out of context? So I think von Neumann, the latter part of that decision, I read it as having assumed that there was a due process right to a timely remission, adjudication of the remission petition. And then the court there found that... You mean in Section 3? Yes. But in Section 2, it says there is no such thing. So it's just kind of continuing to spin out the analysis, but it was pretty clear in 2 that the court was finding that there was no such thing. That's certainly correct. I think the court had maybe alternative holdings that you could say, but I don't think the court should just ignore that last section of von Neumann. But I think even if you were to view this case as being, and this issue is not already being decided, I think if you looked at it under an 8850 type analysis or even a Matthews v. Eldridge analysis, you'd come to the bottom-line conclusion that the court came to in Pearson Yacht for the same reasons that there's no entitlement to a pre-forfeiture notice in here, or, excuse me, pre-seizure notice. So the government's view is that on the methodology, it doesn't really matter whether we do Barker, or the answer to the QP is it doesn't matter. That's correct. Thank you. Thank you, Counsel. Rebuttal, Mr. Boretsky. Thank you, Mr. Chief Justice. First, von Neumann and 8850 didn't decide the question that is presented here. They didn't decide whether there could be an interest in avoiding temporary deprivation that is different from the time to a final disposition. The court in this case should not strip the lower courts of the tools they need to analyze whether in a particular case more process is due. We've heard the phrase today, let judges be judges. This court should let judges be judges and trust the lower courts as well as the states and the federal government to figure out what to do with the guidance that this court should provide that some meaningful process is due in order to protect an innocent owner pending a final adjudication. And jurisprudentially, Gerstein, again, is another example here. In Gerstein, the court recognized that there should be a prompt probable cause determination. It took several years of then percolation before the court in City of Riverside provided more concrete guidance and said, okay, this is what that needs to look like. So all the court needs to do here is to recognize that the interests that we're asserting are different than the ones that were asserted in von Neumann and 8850. They should be analyzed under Matthews because Matthews is the test for determining whether additional process is due. And then the lower courts and the states, and if necessary, the federal government, can figure out how that works. Now, in terms of some of the flexibility that that might afford, the federal statute, 18 U.S.C. 983 F, it allows or entitles a claimant to the immediate release of seized property if they can show substantial hardship. That is in some ways even more valuable than a hearing. So that may be perfectly constitutionally sufficient. Utah has a similar sort of scheme. And so, again, the court doesn't need to micromanage exactly how all of this works. With respect to Barker, Barker would be a poor fit for the claim that we're asserting here because Barker is not designed to answer the question of whether more process is due. For starters, under the first prong of Barker, it takes a year before Barker even kicks in. Barker does not account for private interests. It doesn't account, for example, for the difference between taking away somebody's car, which is necessary for their livelihood, and taking away some other piece of property that they might not need in the same way. Matthews does. Barker also provides no flexibility in the remedy. The only remedy that Barker can lead to is, in the criminal context, dismissal of the indictment. Here, dismissal of the forfeiture proceeding altogether. It doesn't provide any flexibility for considering whether additional process is due. With respect to the facts here, no court has considered the value of additional process and whether, in fact, the plaintiffs could have moved for prompt summary judgment, and if so, how long that would have taken. What we do know is that in the course of ordinary litigation, the state here, to use Sutton's case as an example, the state took five months to respond to discovery requests about what the state knew about the innocent owner defense, and ultimately those discovery requests were entirely nonresponsive. And so all of this back and forth about what could have happened on summary judgment, that's something that the lower courts can consider in the first instance. It hasn't been considered before in applying Matthews and determining what would be the value of additional process. I'd also point out that the facts of this case show how different this case looks from forfeiture at common law. This is not a case about pirates or owners of ships crossing borders. We're talking here about individuals who lost their cars. In Sutton's case, as a result of losing her car, she missed medical appointments. She wasn't able to keep a job. She wasn't able to pay a cell phone bill, and as a result of paying a cell phone bill, not being able to pay her cell phone bill, was not in a position to be able to communicate about the forfeiture proceedings. In Ms. Cauley's case, she not only begged and pleaded with the police for her car back, but also had communications with the DA's office. The DA's office said, if you comply with our process, you'll get your car back, but it'll take at least six months until there's a hearing. And so we're far removed from the narrow sense in which history recognized forfeiture. Lastly, Alabama talks about government interests here. Government interests can be weighed, in fact, must be weighed, as part of the Matthews analysis. They can also be considered at any retention hearing that might result from Matthews. Approximately 20 states have hearings of some sort like that. Alabama itself now provides a much prompter hearing than it did when my client's cars were taken. Lastly, I would just end with a quote from this court's decision in Fuentes. This is at 407 U.S. 90. A prior hearing always imposes some cost in time, effort, and expense, and it is often more efficient to dispense with the opportunity, but these rather ordinary costs cannot outweigh the constitutional right. We ask that the court adopt Matthews and remand for the lower courts to consider. Thank you, counsel. The case is submitted.